IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 21-00136 HG-01 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| OMAR AGOR, JR. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT'S REQUEST TO ADMIT HEARSAY EVIDENCE**

**I.    Jake Torres Was Initially Listed As A Witness By Both The Government And The Defendant**

Defendant Omar Agor, Jr. was charged with one count of Theft of Bank Funds in violation of 18 U.S.C. § 656.  The Indictment charged that the Defendant committed the crime on January 2, 2020, while the Defendant was an employee of Pacific Courier, Inc., a company which provides armored car services for First Hawaiian Bank.  (Indictment at p. 2, ECF No. 1).

Jake Torres was also an employee of Pacific Courier, Inc.

Prior to trial, both the Government and the Defendant initially listed Mr. Torres as a witness on their witness lists. (ECF Nos. 74, 75, 80, and 90).

**II.   The Evidence Presented At Trial Raised A Question About Torres's Involvement In The Crime**

After the jury had been selected, out-of-town witnesses were scheduled, and the trial was to begin the following day, the

1

trial was reassigned to this Judge and we were able to begin as scheduled on March 15, 2023.  (ECF Nos. 91-92).

On March 16, 2023, the second day of trial, the Government continued with its presentation of the case.  The Court became concerned about whether Mr. Torres had consulted with counsel prior to the Government calling him as a witness.

Evidence presented at trial demonstrated that Mr. Torres and the Defendant were together during the time when the theft could have occurred on January 2, 2020.  Testimony and video evidence presented to the jury showed the Defendant and Mr. Torres were alone with the funds when transporting them between the Kahului Airport and at the Pacific Courier, Inc. office.

On March 16, 2023, the Court excused the jurors for their lunch break and consulted with the Parties in open court.  The Court stated, as follows:

> As you, you know, are probably very aware, I just got this case on Wednesday.  And in reviewing the materials that I reviewed, I did not know the, I guess, theory of the case completely.  And during the morning, it occurred to me after viewing the video, that there is a question with respect to Mr. Torres.  And I assumed that Mr. Torres would have counsel once I realized that there was a question as to Mr. Torres.

The Court inquired with both the Government and the Defense counsel whether they were aware if Mr. Torres had counsel.  Both Parties represented that they did not know.

The Court believed it was necessary to ask Mr. Torres if he was represented by counsel before he was called as a witness. The Court stated:

So, here's what I propose to do: We are not going to go forward with Mr. Torres, it is necessary, I believe, to find out if Mr. Torres has counsel. So we're going to bring him in and find out if he has counsel. If not, I am willing to have somebody from the [Criminal Justice Act Panel], if he doesn't want to get his own counsel, we'll have somebody from the CJA appointed and we'll put him off until tomorrow.

Neither Party objected to the Court's proposal.

### III. The Court Inquired With Torres About His Representation And The Government Declined To Call Torres As A Witness

Following the lunch break on March 16, 2023, the Court, on the record, with the Parties and Defendant present, asked Mr. Torres if he had obtained counsel. Mr. Torres stated that he had not. The Court informed Mr. Torres that he had the opportunity to retain his own counsel or he could seek appointment of counsel from a member of the Criminal Justice Act Panel. The Court provided Mr. Torres with a financial affidavit to fill out if he was seeking CJA counsel. The Court instructed Mr. Torres to inform the Court by 12 noon Friday, the next day, whether he had retained his own attorney or would like appointment of counsel. The Court ordered Mr. Torres to return for trial on Tuesday, March 21, 2023.

The next day, Friday, March 17, 2023, Mr. Torres requested the Court appoint him counsel from the CJA panel. Attorney Rustam Barbee was appointed to represent Mr. Torres.

On Monday, March 20, 2023, the Government informed the Court that it no longer wished to call Mr. Torres as a witness. (Gov't Brief at pp. 8-9, ECF No. 105). The Government explained that

its theory of the case changed following the evidence presented
at trial.  The Government stated that it was not until Defendant
Agor's ex-wife testified on Friday March 17, 2023, that its
position changed.  The Government asserted that when Kaimana Agor
testified during the trial, "the importance of the telephone call
the defendant made to her at 7:53:24 a.m. on January 2, 2020,
became evident."  (Id. at p. 6).  The Government explained its
new theory, as follows:

> That call occurred while the defendant and Mr. Torres
> were parked on the tarmac (see Exhibit 30(g)) and
> lasted, according to Kaiama Agor, some 2.5 minutes, or
> until about 7:56 a.m.  That call ended about a minute
> before Mr. Torres drove the van closer to the plane so
> the duffel bags could be off-loaded.  The Government's
> theory of the case is that when the defendant asked his
> then wife where she parked, he was looking for a place
> to "stash the cash" that he and Mr. Torres were about
> to steal.

(Gov't Brief at pp. 6-7, ECF No. 105).  The Government stated in
its pleading that given the evidence at trial it "cannot now
ethically call Mr. Torres as a witness."  (Id. at p. 9).

   The Defendant still wished to call Mr. Torres as a witness
in its case.  The Defendant requested that Mr. Torres be required
to testify.  The Court informed the Parties that it would speak
with Mr. Torres during a jury break the following day, Tuesday,
March 21, 2023.  The Court explained that the hearing would be to
determine if Mr. Torres wished to testify or whether he wished to
invoke his Fifth Amendment Right not to testify as required
pursuant to United States v. Klinger, 128 F.3d 705, 709 (9th Cir.
1997).

4

## IV.  Torres Invoked His Fifth Amendment Right Not To Testify At Trial

On March 21, 2023, the fourth day of the trial, the Court held an evidentiary hearing with Mr. Torres with his attorney present.  (Minutes from Jury Trial Day 4, ECF No. 123).  The jury was not present.

The Court informed Mr. Torres of his right to invoke his Fifth Amendment right not to incriminate himself.  The Court asked Mr. Torres and Attorney Barbee if Mr. Torres intended to testify at trial, or of he intended to invoke his Fifth Amendment right not to testify.

Attorney Barbee stated that Mr. Torres would be invoking his Fifth Amendment right not to testify at trial.  Mr. Torres also told the Court that he was invoking his Fifth Amendment right and he declined to testify.

The Defendant stated that it still wished to call Mr. Torres as a witness.  The Court inquired with Defendant's counsel about any questions they may have for Mr. Torres that would not be subject to Mr. Torres's Fifth Amendment right not to incriminate himself.  Defense counsel stated they did not have any questions outside of the scope of Mr. Torres's privilege.  Defense counsel stated that all of their questions for Mr. Torres were about the events of January 2, 2020 and the statements Mr. Torres had previously made concerning the theft for which Defendant was on trial.

The Court ruled that Mr. Torres had a good-faith basis for

invoking his Fifth Amendment right given the totality of the circumstances.  Numerous facts supported Mr. Torres' good-faith basis for invoking the privilege including, but not limited to:

    (1)   evidence that Mr. Torres was present with Defendant during the time of the alleged theft on January 2, 2020;

    (2)   evidence that Mr. Torres was present with the Defendant in the van when the Defendant made a phone call to his then-wife on January 2, 2020 to inquire where her car was parked that would allow him to store the stolen money; and,

    (3)   based on the representations made by Mr. Torres's counsel at the evidentiary hearing.

See United States v. Vavages, 151 F.3d 1185, 1192 (9th Cir. 1998).

## V.   Defendant Requested The Court Admit Hearsay Evidence In Lieu Of Mr. Torres's Testimony

A criminal defendant cannot call a witness if that witness will merely be invoking his Fifth Amendment right not to testify. Klinger, 128 F.3d at 709.

In lieu of Mr. Torres's testimony, given his invocation of his Fifth Amendment right not to testify, Defense counsel sought to call other witnesses to testify about hearsay statements made by Mr. Torres.  (Def.'s Brief, ECF No. 104).

The Government opposed Defendant's request.  (Gov't Briefs, ECF Nos. 105, 116, 118).  The Government argued that the evidence was impermissible hearsay and that there was no exception to hearsay under which the evidence would be admissible.

<u>**STANDARD OF REVIEW**</u>

A witness who properly invokes his Fifth Amendment right not to testify is deemed "unavailable" for purposes of Federal Rule of Evidence 804. <u>United States v. Salerno</u>, 505 U.S. 317, 321 (1992).

Federal Rule of Evidence 804(b) provides exceptions to the rule against hearsay when a witness is unavailable, and it states in relevant part:

> **Rule 804. Exceptions to the Rule Against Hearsay—When the Declarant Is Unavailable as a Witness**
>
> (b)  **The Exceptions.**  The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:
>
>> (1)  **Former Testimony.**  Testimony that:
>>
>>> (A)  was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and
>>>
>>> (B)  is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination.
>>
>> (2)  **Statement Under the Belief of Imminent Death.**  In a prosecution for homicide or in a civil case, a statement that the declarant, while believing the declarant's death to be imminent, made about its cause or circumstances.
>>
>> (3)  **Statement Against Interest.**  A statement that:
>>
>>> (A)  a reasonable person in the declarant's position would have

made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and

(B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

(4) **Statement of Personal or Family History.** A statement about:

(A) the declarant's own birth, adoption, legitimacy, ancestry, marriage, divorce, relationship by blood, adoption, or marriage, or similar facts of personal or family history, even though the declarant had no way of acquiring personal knowledge about that fact; or

(B) another person concerning any of these facts, as well as death, if the declarant was related to the person by blood, adoption, or marriage or was so intimately associated with the person's family that the declarant's information is likely to be accurate.

(5) **Other Exceptions** as provided in Fed. R. Evid. 807.

(6) **Statement Offered Against a Party That Wrongfully Caused the Declarant's Unavailability.** A statement offered against a party that wrongfully caused—or acquiesced in wrongfully causing—the declarant's unavailability as a witness, and did so intending that result.

8

**Rule 807.  Residual Exception**

    (a)   **In General.**  Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804:

        (1)   the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and

        (2)   it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

    (b)   **Notice.**  The statement is admissible only if the proponent gives an adverse party reasonable notice of the intent to offer the statement—including its substance and the declarant's name—so that the party has a fair opportunity to meet it.  The notice must be provided in writing before the trial or hearing—or in any form during the trial or hearing if the court, for good cause, excuses a lack of earlier notice.

<u>**ANALYSIS**</u>

Jake Torres was unavailable to testify at trial when he invoked his Fifth Amendment right not to incriminate himself.  In lieu of his testimony, Defense counsel sought to elicit hearsay testimony from other witnesses about what Mr. Torres had told them.

Defendant did not provide any basis for the admission of the statements pursuant to the Federal Rules of Evidence.

None of the hearsay exceptions set forth in Federal Rule of Evidence 804(b) apply.

**First**, the hearsay exception that allows for the admission of former testimony of the witness does not apply.  Mr. Torres did not testify before the grand jury or otherwise provide prior sworn testimony that would allow introduction of such evidence pursuant to Fed. R. Evid. 804(b)(1).

**Second**, the hearsay exception for statements made under the belief of imminent death does not apply.  Mr. Torres did not make a statement under belief of imminent death pursuant to Fed. R. Evid. 804(b)(2).

**Third**, the hearsay exception for statements made against the declarant's own interest does not apply.  None of the statements that the Defendant requested to admit are statements Mr. Torres made against his own interest pursuant to Fed. R. Evid. 804(b)(3).

The Defendant sought to introduce statements made by Mr. Torres to employees of Pacific Courier, Inc. and to law enforcement investigators.  The statements were made as part of the investigation into the crime for which Defendant Agor was on trial.  Mr. Torres denied any involvement in the crime in his statements.

In order to be admissible under Fed. R. Evid. 804(b)(3), the statement must be so decidedly against interest that a reasonable person in his position would not have made the statement unless

he believed it to be true.  "When a statement is not against the interest of the declarant, it lacks the foundation for trustworthiness on which this rule is based." <u>Donovan v. Crisostomo</u>, 689 F.2d 869, 877 (9th Cir. 1982).

The United States Supreme Court has ruled that in order for the exception in Fed. R. Evid. 804(b)(3) to apply, the statements must be "truly self-inculpatory" and expose the witness himself to criminal liability. <u>Williamson v. United States</u>, 512 U.S. 594, 599-600, 604 (1994).

None of Mr. Torres's statements that Defense counsel requested to admit are "truly self-inculpatory." <u>Id.</u>  There is no basis to find that the statements made by Mr. Torres have a foundation for trustworthiness.  As the Government correctly points out, "Mr. Torres had a strong motivation to lie in his earlier statements to law enforcement and Pacific Courier employees to deflect blame and deny involvement in or responsibility for the theft of the $400,000 he had transported with the defendant.  His prior hearsay statements were also unsworn and made during the course of voluntary interviews.  He has never given testimony under penalty of perjury about these issues, including never having been called to testify before the grand jury."  (Gov't Brief at p. 6, ECF No. 105).

Statements offered pursuant to Fed. R. Evid. 804(b)(3) must be corroborated to demonstrate their reliability. <u>United States v. Hoyos</u>, 573 F.2d 1111, 1115 (9th Cir. 1978).  The statements made by Mr. Torres are not corroborated and may have been made in

11

an attempt to curry favor with investigators.  United States v.
Magana-Olvera, 917 F.2d 401, 408-09 (9th Cir. 1990); see also
United States v. Nazemian, 948 F.2d 522, 530 (9th Cir. 1991).

Defendant requested to admit the statements because they are
exculpatory evidence as to the Defendant's guilt.  Even though
Mr. Torres's statements to investigators may be exculpatory as to
the Defendant, the statements must be supported by corroborating
circumstances which indicate the trustworthiness of the
statements in order to be admissible.  Nazemian, 948 F.2d at 530.
There are no such circumstances in this case.  There is a real
danger that the motivation for Mr. Torres to provide the
statements was to curry favor with the authorities.  Magana-
Olvera, 917 F.2d at 408-09; see United States v. Rubio-Topete,
999 F.2d 1334, 1339 (9th Cir. 1993) (precluding testimony of a
defense investigator as to what an alleged co-conspirator said to
him about the defendant's involvement in the drug operation
because the statement lacked a basis for trustworthiness pursuant
to Fed. R. Evid. 804(b)(3)).

In sum, Mr. Torres's statements about the events of January
2, 2020 are not inculpatory, they are inherently untrustworthy,
and there is no corroboration as to their veracity.  Defendant
has not provided a basis that would support the admission of the
statements as an exception to hearsay pursuant to Fed. R. Evid.
804(b)(3).

**Fourth**, Mr. Torres did not make a relevant statement about
personal or family history that Defendant seeks to admit as an

exception to hearsay pursuant to Fed. R. Evid. 804(b)(4).

**Fifth**, the residual exception to hearsay set forth in Fed. R. Evid. 807 does not allow for the admission of Mr. Torres's statements. As explained above, Mr. Torres's statements do not contain a sufficient guarantee of trustworthiness. Fed. R. Evid. 807. The statements are not self-incriminatory, they are not against penal interest, they were not made under oath or subject to penalties of perjury, and Mr. Torres had a motive to lie. See United States v. Redlightning, 624 F.3d 1090, 1118 (9th Cir. 2010).

As the Government points out, the Government only interviewed Mr. Torres prior to interviewing Defendant's ex-wife Kaimana Agor about the phone call placed to her on January 2, 2020. (Gov't Brief at p. 8, ECF No. 105). The Government asserts that it later learned that the phone call was made in Mr. Torres's presence, and that it "changed Mr. Torres's status and is different in kind from the questions he was previously asked and answered." (Id.) To apply the residual exception would be inappropriate in this instance because equivalent guarantees of cross-examination are not present given the change in circumstances after Mr. Torres made his statements. United States v. Lindsay, 931 F.3d 852, 866 (9th Cir. 2019).

**Sixth**, the Government was not responsible for Mr. Torres's unavailability. Fed. R. Evid. 804(b)(6) is inapplicable. See Giles v. California, 554 U.S. 353, 359, 367 (2008) (requiring a showing that the government "engaged in conduct *designed* to

13

prevent the witness from testifying" in order for 804(b)(6) to apply).

**Finally**, Defendant argues that the Court should disregard the requirements of the Federal Rules of Evidence and find that Mr. Torres's statements are admissible because of their exculpatory nature pursuant to Chambers v. Mississippi, 410 U.S. 284, 295-96 (1973).

In Chambers, the United States Supreme Court ruled that the state court should have allowed the defendant to cross-examine a witness who had signed a sworn confession to the murder for which the defendant was on trial.  The witness had also made other inculpatory statements to others.  In the circumstances of the case, the United States Supreme Court ruled that the Mississippi state court evidentiary rule should not have been applied to defeat the defendant's constitutional right to confront the declarant and present exculpatory evidence.  Id. at 302.

The facts here bear no resemblance to Chambers.  Mr. Torres never made an inculpatory statement, much less a signed, sworn confession as in Chambers.  There are no corroborating circumstances to clearly indicate the trustworthiness of Mr. Torres's statements that would provide a basis for their admission pursuant to Chambers.  United States v. Oropeza, 564 F.2d 316, 325 (9th Cir. 1977).  No exceptional circumstance supports the admission of the hearsay statements.  United States v. Wilson, 2012 WL 12897871, at *6 (D. Ariz. Jan. 15, 2012) (finding that hearsay evidence of prior statements made by

witnesses who invoked their Fifth Amendment rights were not admissible and the court's preclusion of the evidence did not violate the defendant's Sixth Amendment right to present a defense), aff'd, 533 Fed. Appx. 765, 766 (9th Cir. 2013).

The prior statements were given to authorities investigating the theft on January 2, 2020, and Mr. Torres had a motivation to provide false statements to curry favor in the investigation. There is no indicia of reliability in the statements that would allow for their admission. United States Gadson, 763 F.3d 1189, 1201 (9th Cir. 2014); United States v. Fowlie, 24 F.3d 1059, 1069 (9th Cir. 1994).

## CONCLUSION

The prior statements made by Mr. Torres to investigators and Pacific Courier, Inc. employees are hearsay. None of the exceptions to hearsay pursuant to Fed. R. Evid. 804(b) or Fed. R. Evid. 807 apply.

Mr. Torres's statements are not truly inculpatory. The statements are not supported by corroborating circumstances that clearly indicate their trustworthiness. Rather, the statements were given to authorities investigating the theft on January 2, 2020. Mr. Torres had a motivation to provide false statements in order to curry favor in the investigation.

//

//

//

15

Mr. Torres's prior statements are **INADMISSIBLE.**

Defendant's request to elicit hearsay evidence about the contents of Mr. Torres's statements are also **INADMISSIBLE.**

DATED: April 14, 2023, Honolulu, Hawaii.

IT IS SO ORDERED.



Helen Gillmor
United States District Judge