```
          IN THE UNITED STATES DISTRICT COURT

             FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,     )   CRIM. NO. 21-00136 HG-01
                              )
            Plaintiff,        )
                              )
     vs.                      )
                              )
OMAR AGOR, JR.                )
                              )
            Defendant.        )
                              )
```

**ORDER ON SENTENCING GUIDELINES**

On November 4, 2021, Defendant Omar Agor, Jr. was charged with one count of Theft of Bank Funds in violation of 18 U.S.C. § 656.  (Indictment, ECF No. 1).

Following a five-day jury trial, on March 23, 2023, the jury returned a guilty verdict against Defendant Agor, Jr. as to the one count in the Indictment.  (ECF No. 131).

On May 30, 2023, the Probation Officer filed a Draft Presentence Report.  (ECF No. 140).

On June 13, 2023, Defendant filed a Sentencing Statement. (ECF No. 141).

Also on June 13, 2023, the Government filed its Sentencing Statement in response to the Draft Presentence Report.  (ECF No. 142).

On June 26, 2023, the Probation Officer filed the Presentence Investigation Report.  (ECF No. 143).

On July 7, 2023, the Defendant filed a Sentencing Memorandum and Request for Variance.  (ECF No. 144).

1

Also on July 7, 2023, the Government filed its Sentencing Memorandum and Request for an Upward Variance.  (ECF No. 145).

On July 12, 2023, Defendant requested a continuance of his sentencing, which was granted.  (ECF No. 146).  The Court requested additional briefing on the application of certain sentencing guidelines.  (Id.)

On July 13, 2023, the Government filed a request to add additional legal issues to the briefing, which was granted.  (ECF Nos. 147, 148).

On August 14, 2023, the Government filed its Supplemental Memorandum.  (ECF No. 149).

On the same date, Defendant filed his Supplemental Memoranda.  (ECF Nos. 150, 152).

Also on August 14, 2023, the Parties filed a Joint Notice Regarding Defendant's Pending Hawaii State Court Charges.  (ECF No. 151).

On September 6, 2023, the Government filed its Response to the Defendant's Memoranda.  (ECF No. 153).

On September 13, 2023, Defendant filed his Response to the Government's Memorandum.  (ECF No. 154).

On October 20, 2023, the Probation Officer filed a First Amended Presentence Investigation Report.  (ECF No. 156).

On November 15, 2023, the Probation Officer filed a Second Amended Presentence Investigation Report.  (ECF No. 157).

**ANALYSIS**

On March 23, 2023, the jury returned a guilty verdict against Defendant Agor, Jr. for one count of Theft of Bank Funds in violation of 18 U.S.C. § 656.  (Verdict, ECF No. 131).

The United States Sentencing Guidelines provide that Section 2B1.1 applies for convictions of Theft of Bank Funds pursuant to 18 U.S.C. § 656.

The Base Offense Level for Theft of Bank Funds is 7.  U.S.S.G. § 2B1.1(a)(1).

Section 2B1.1(b) provides for enhancements for specific offense characteristics for Theft of Bank Funds.  Section 2B1.1(b)(1) provides that a 12-level increase applies to a loss amount of more than $250,000 but less than $550,000.  U.S.S.G. § 2B1.1(b)(1)(G).

There are no objections to the base offense level of 7 and the 12-level increase based on the theft of $400,000 as determined by the jury verdict.

The Parties disagree as to whether additional sentencing enhancements apply, specifically:

  (1)  the application of United States Sentencing Guideline Section 2B1.1(b)(16)(B) for Possession of a Dangerous Weapon In Connection With Theft;

  (2)  the application of the 2023 Guideline Amendment set forth in Section 4C1.1 for Certain Zero Point Offenders;

  (3)  the application of Section 3C1.1 for Obstruction of Justice; and,

  (4)  the application of Section 3B1.3 for Abuse of Position

of Trust.

## I. Legal Standard And Burdens of Proof

The district court shall consider all applicable Guidelines provisions in calculating the guideline range for an offense. United States v. Smith, 719 F.3d 1120, 1123 (9th Cir. 2013). The district court may apply all applicable specific offense characteristics to enhance the base level offense. United States v. Williams, 693 F.3d 1067, 1075 (9th Cir. 2012). In determining offense characteristics and adjustments, the Court can take into account both the offense of conviction and all relevant conduct as defined in U.S.S.G. § 1B1.3. Id.

"The burden of proof for a factual finding underlying a sentencing enhancement depends on the magnitude of the finding's effect on the sentencing range." United States v. Valle, 940 F.3d 473, 479 (9th Cir. 2019). Generally, a preponderance of the evidence standard applies. Id. The Government must meet the higher "clear and convincing evidence" standard in cases where there is "an extremely disproportionate impact on the sentence." United States v. Jordan, 256 F.3d 922, 930 (9th Cir. 2001).

Here, the lower preponderance of the evidence standard applies because the disputes would not result in an extremely disproportionate impact on the sentence given the agreed-upon baseline guidelines of 19. See United States v. Gonzalez, 492 F.3d 1031, 1039-30 (9th Cir. 2007).

## II. Possession of a Dangerous Weapon in Connection with Theft Pursuant to U.S.S.G. § 2B1.1(b)(16)(B)

Section 2B1.1(b)(16)(B) of the United States Sentencing Guidelines provides that if the theft offense involved "possession of a dangerous weapon (including a firearm) in connection with the offense, increase by 2 levels."

The Government bears the burden to prove that the 2-level increase applies. United States v. Felix, 561 F.3d 1036, 1043-44 (9th Cir. 2009) (citing United States v. Howard, 894 F.2d 1085, 1090 (9th Cir. 1990)).

### A. Definition of "Dangerous Weapon"

The term dangerous weapon is defined in Application Note 1(E) to Section 1B1.1, as follows:

> "Dangerous weapon" means (i) an instrument capable of inflicting death or serious bodily injury; or (ii) an object that is not an instrument capable of inflicting death or serious bodily injury but (I) closely resembles such an instrument; or (II) the defendant used the object in a manner that created the impression that the object was such an instrument (e.g. a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun).

The definition of "dangerous weapon" is "expansive" and includes "walking sticks, leather straps, rakes, tennis shoes, rubber boots, dogs, rings, concrete curbs, clothes irons, and stink bombs." United States v. Dayea, 32 F.3d 1377, 1379 (9th Cir. 1994).

**B.  Defendant Agor Possessed A Dangerous Weapon In Connection With The Bank Theft**

**1.  Defendant Agor Possessed A Knife In Connection With The Theft on January 2, 2020**

The jury determined that on January 2, 2020, Defendant Agor stole $400,000 when he was transporting currency in his employment with Pacific Courier, Inc. ("PCI") at Kahului International Airport on Maui.  The Government provided evidence that Defendant carried at least one knife when he committed the theft on January 2, 2020.

Defendant's former supervisor, Joshua Brennan, stated in his Declaration that Defendant Agor "always carried knives with him when he was working for PCI."  (Declaration of Joshua Brennan at ¶ 20, attached as Ex. 10 to Gov't Response, ECF No. 149-4).

Mr. Brennan explained:

> I believe [Agor carried knives while working] because he was concerned that someone might try and rob him, especially when he was carrying large quantities of currency, and because he was not yet licensed to carry a firearm.  Couriers would often opt to carry a knife rather than a box cutter or scissors to use when a cutting implement was required on the job.  Consequently, Mr. Agor carried at least one knife with him whenever he transported currency on behalf of PCI.

(Id.)

Defendant's ex-wife testified at trial that Defendant Agor carried knives on a regular basis.  (Trial Transcript Day 3 at p. 39, ECF No. 112).

The Government introduced evidence at trial that a knife or "cutter" would have been required in order to cut the seals on

6

the bags of currency to remove the funds.  (Trial Transcript Day 1 at p. 13, ECF No. 110; Trial Transcript Day 2 at p. 25, ECF No. 111).

The Court finds by a preponderance of the evidence that Defendant Agor possessed a dangerous weapon, a knife, in connection with the bank theft on January 2, 2020.

### 2. On February 13, 2020, Defendant Agor Possessed A Firearm And Two Knives In Connection With The Theft That Occurred on January 2, 2020

The Government also provided evidence that Defendant Agor possessed two knives and a firearm "in connection" with the theft when Defendant Agor was arrested on February 13, 2020.

On February 13, 2020, Defendant was caught in a prostitution sting on Maui, when attempting to solicit a prostitute.  When Defendant Agor entered the hotel room where the undercover sting took place, he was carrying a backpack that contained:

(1)  a firearm with a clip loaded with 10 rounds of ammunition; and,

(2)  two knives.

(See Exhibit D, photograph of the firearm, ammunition, and two knifes, attached to Brennan Decl. in Gov't Response, ECF No. 149-4).

Defendant's backpack also contained $13,800 in $100 bills that Defendant Agor stole on January 2, 2020, when he was transporting currency for PCI at Kahului Airport.  The Police Officers also found an additional $2,800 in $100 bills on

7

Defendant's person. Officers conducted a search of Defendant's car and found an additional $20,000 in stolen $100 bills, for a total of $37,000 of the bills stolen on January 2, 2020, along with the firearm, ammunition, and two knives.

Officer Kahiapo Kauhaahaa, one of the officers who arrested Defendant on February 13, 2020, provided a declaration explaining that Defendant Agor possessed the Glock pistol, ammunition clip that contained 10 rounds of ammunition, and two knives. (Declaration of Kahiapo Kauhaahaa at ¶ 11, attached as Ex. 13 to Gov't Response, ECF No. 149-7). Officer Kauhaahaa explained that, given his experience, Defendant Agor carried the dangerous weapons to protect the currency that he stole on January 2, 2020. (Id. at ¶ 13).

FBI Special Agent Danielle DeSanctis provided a Declaration that stated the same information, explaining that Defendant Agor possessed the firearm and knives to protect the currency that he stole. (Declaration of Danielle DeSanctis at ¶¶ 17-18, attached as Ex. 14 to Gov't Response, ECF No. 149-8).

### a. Specific Use Of The Dangerous Weapon Is Not Required

Defendant Agor does not dispute that he possessed dangerous weapons on February 13, 2020. Defendant Agor argues that his possession of the weapons on February 13, 2020 is insufficient for the enhancement to apply because he did not use the weapons to commit the crime on January 2, 2020.

8

Contrary to Defendant's position, a defendant need not use the dangerous weapon in a threatening manner in order for Section 2B1.1(b)(16)(B) to apply.  United States v. Wen, 2023 WL 3495820, *1 (9th Cir. May 17, 2023).  The item need only be an instrument capable of inflicting death or serious bodily injury for the enhancement to apply.  Id.  The Ninth Circuit Court of Appeals has explained that items such as a car, hammer, box cutter, and rope are all self-evidently instruments capable of inflicting death or serious injury.  Id.  Possession of any such dangerous weapons in connection with a theft is sufficient to warrant application of the enhancement.  Id.  The defendant need not actually use the items to inflict serious bodily injury to receive the 2-level increase.  Id. (citing United States v. Lavender, 224 F.3d 939, 941 (9th Cir. 2000).

      **b.    "In Connection" With The Offense In Section 2B1.1(b)(16)(B) Includes Possession Of Dangerous Weapons Following The Commission Of The Crime**

A defendant need not possess the weapons during the commission of the crime for the Section 2B1.1(b)(16)(B) enhancement to apply.  The Ninth Circuit Court of Appeals has consistently ruled that possession of a dangerous weapon following the crime constitutes possession "in connection" with the offense when the possession is part of the relevant conduct of the crime.  United States v. Valenzuela, 816 Fed. Appx. 211, 212 (9th Cir. 2020); Wen, 2023 WL 3495820, at *1; see also United

9

States v. Fernandez, 526 F.3d 1247, 1252 (9th Cir. 2008).

"In connection" as provided in Section 2B1.1(b)(16)(B) is not limited to the specific time the defendant committed the theft offense.  Acts are "in connection" with the offense when they are part of the relevant conduct and include acts "in preparation of the offense," or in the course of "attempting to avoid detection or responsibility" for that offense, or in efforts "to evade arrest."  Valenzuela, 816 Fed. Appx. at 212 (citing U.S.S.G. § 1B1.3(a)(1)(A); United States v. Michael, 220 F.3d 1075, 1076-77 (9th Cir. 2000)).

In Valenzuela, the defendant pleaded guilty to theft of bank funds in violation of 18 U.S.C. § 656, the same crime for which Defendant Agor was found guilty at trial.  816 Fed. Appx. at 212. The defendant in Valenzuela obtained a firearm six hours after the theft and took the firearm with him as he drove stolen cash to Mexico.  Id.  The district court found that the defendant possessed a dangerous weapon in connection with the theft, even though he did not physically possess the firearm during the commission of the theft at the bank, because he possessed the firearm when he drove the stolen cash to Mexico.  Id.

On appeal, the defendant argued to the Ninth Circuit Court of Appeals that the dangerous weapon enhancement pursuant to Section 2B1.1(b)(16)(B) did not apply because he did not possess the firearm in connection with the offense.  The Appellate Court rejected defendant's argument, explaining that the defendant need not possess the weapon during the commission of the crime.  The

10

Appeals Court explained that the defendant's possession of the dangerous weapon was part of the relevant conduct of the offense which was sufficient for the enhancement to apply.  Id.

Just in Valenzuela, Defendant Agor possessed the firearm and the two knives in connection with the bank theft crime. Defendant Agor possessed the weapons to protect the proceeds that he stole and to avoid detection and responsibility for the offense.

The Court finds that the two-level enhancement for possession of a dangerous weapon (including a firearm) in connection with the theft offense pursuant to Section 2B1.1(b)(16)(B) applies.

### III. Adjustment for Certain Zero-Point Offenders Pursuant to U.S.S.G. § 4C1.1(a)

The United States Sentencing Commission adopted amendments to the United States Sentencing Guidelines, which were submitted to Congress on April 27, 2023, and became effective on November 1, 2023, as set forth in the 2023 Guidelines Manual in Section 4C1.1(a).

The 2023 Guidelines provide for a 2-level downward adjustment for certain individuals with zero criminal history points, as follows:

> §4C1.1. Adjustment for Certain Zero-Point Offenders
>
> > (a) ADJUSTMENT.—If the defendant meets all of the following criteria:
> >
> > > (1) the defendant did not receive any

        criminal history points from Chapter Four, Part A;

(2) the defendant did not receive an adjustment under §3A1.4 (Terrorism);

(3) the defendant did not use violence or credible threats of violence in connection with the offense;

(4) the offense did not result in death or serious bodily injury;

(5) the instant offense of conviction is not a sex offense;

(6) the defendant did not personally cause substantial financial hardship;

(7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);

(9) the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and

(10) the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848;

decrease the offense level determined under Chapters Two and Three by 2 levels.

    (b) DEFINITIONS AND ADDITIONAL CONSIDERATIONS.—
        (1) "Dangerous weapon," "firearm," "offense," and "serious bodily injury" have the meaning given those terms in the Commentary to §1B1.1 (Application Instructions)....

12

U.S.S.G. § 4C1.1.

It is the Defendant's burden to prove that the reduction for Zero-Point Offenders set forth in Section 4C1.1 applies. Felix, 561 F.3d at 1043-44.

Pursuant to Section 4C1.1(a)(7), the defendant must prove that he did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense.

As explained above regarding the application of Section 2B1.1(b)(16)(B) and the scope of the term "in connection with the offense," the evidence in the record demonstrates that Defendant Agor, Jr. was in possession of dangerous weapons in connection with the bank theft offense.

Defendant possessed a knife on January 2, 2020 and a firearm and two knives on February 13, 2020 in connection with the theft for which he was found guilty at trial. (See (Declaration of Joshua Brennan at ¶ 20, attached as Ex. 10 to Gov't Response, ECF No. 149-4; Trial Transcript Day 3 at p. 39, ECF No. 112; Trial Transcript Day 1 at p. 13, ECF No. 110; Trial Transcript Day 2 at p. 25, ECF No. 111).

Defendant Agor has not demonstrated that he did not possess a firearm or other dangerous weapon in connection with the offense as set forth in Section 4C1.1(a)(7).

Defendant is not entitled to a two-level reduction for a Zero Point Offender as set forth in U.S.S.G. § 4C1.1.

**IV.   Obstruction of Justice Pursuant To U.S.S.G. § 3C1.1**

The United States Sentencing Guidelines provides for a 2-level increase pursuant to Section 3C1.1, as follows:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (1) the defendant's offense of conviction and any relevant conduct; or (2) a closely related offense, increase the offense level by 2 levels.

The Commentary and Application Notes to Section 3C1.1 provide a non-exhaustive list of conduct that warrants the 2-level enhancement including:

> [P]roviding a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense.

U.S.S.G. § 3C1.1, Application Note 4(G).

The Notes explain that simply "making false statements, not under oath, to law enforcement officers" is not enough to warrant enhancement.  U.S.S.G. § 3C1.1, Application Note 5(B).  The materially false statements must have "significantly obstructed or impeded the official investigation or prosecution of the instant offense."  See id. at Application Note 4(G).

The Ninth Circuit Court of Appeals has ruled that for an enhancement based on a false statement to law enforcement, there must be an "actual impediment, rather than a mere attempt to impede the investigation [or prosecution]."  United States v. McNally, 159 F.3d 1215, 1217 (9th Cir. 1998); see also United

14

States v. Solano-Godines, 120 F.3d 957, 964-65 (9th Cir. 1997).

The Government bears the burden to prove that the 2-level increase applies.  Felix, 561 F.3d at 1043-44.

The Government argues that Defendant Agor made "numerous material false statements" both to his employer and to law enforcement personnel.  The Government makes several arguments about why statements made to PCI personnel interfered with PCI's own internal decisionmaking, including decisions to promote Defendant.

The Court finds that application of the Obstruction of Justice enhancement in this case is a close question.  While it is clear Defendant Agor provided numerous false statements to both law enforcement and his employer, there is insufficient evidence that his statements actually impeded or interfered with the Government's investigation.

The Government argues that the Guideline and the Commentary are inconsistent as to the requirements for Section 3C1.1 and argues that actual impediment should not be required.  The Government relies on an unpublished case, United States v. Wolverine, 584 Fed. Appx. 646 (9th Cir. 2014).  The Ninth Circuit Court of Appeals, however, has not overruled the published decisions in United States v. McNally, 159 F.3d 1215, 1217 (9th Cir. 1998) and United States v. Solano-Godines, 120 F.3d 957, 964 (9th Cir. 1997), which require evidence that a defendant actually impeded an investigation for the obstruction enhancement to apply.  See also United States v. Garcia, 700 Fed. Appx. 639, 643

15

(9th Cir. 2017).

There is insufficient evidence that Defendant Agor actually misled, obstructed, or impeded the investigation besides simply providing false information to law enforcement.

**V.  Abuse Of Position of Trust Pursuant To U.S.S.G. § 3B1.3**

United States Sentencing Guideline Section 3B1.3 provides as follows:

> If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels.  This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic.  If this adjustment is based upon an abuse of a position of trust, it may be employed in addition to an adjustment under § 3B1.1 (Aggravating Role); if this adjustment is based solely on the use of a special skill, it may not be employed in addition to an adjustment under § 3B1.1 (Aggravating Role).

U.S.S.G. § 3B1.3.

The Commentary and Application Notes to Section 3B1.3 provides guidance, explaining:

> "Public of private trust" refers to a position of public or private trust characterized by professional or managerial discretion (*i.e.,* substantial discretionary judgment that is ordinarily given considerable deference).  Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature.  For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (*e.g.,* by making the detection of the offense or the defendant's responsibility for the offense more difficult).

U.S.S.G. § 3B1.3, Application Note 1.

The Court, again, finds this is a close question.  There is

16

evidence that Defendant Agor made the schedule for January 2, 2020, in which he and Jake Torres picked up currency at the airport.  The evidence also demonstrates, however, that Defendant Agor had the same job as the other 13 PCI employees who transported currency around Maui.  There is no evidence that he had significantly less supervision than other employees.

The Court finds there is insufficient evidence to demonstrate Defendant Agor held a position of trust with discretionary authority that allowed him to perpetrate the crime for which he was convicted.  See <u>United States v. Adebimpe</u>, 819 F.3d 1212, 1217 (9th Cir. 2016).

## **CONCLUSION**

A 2-level increase pursuant to U.S.S.G. § 2B1.1(b)(16)(B) for Possession of a Dangerous Weapon In Connection With Theft applies.

A 2-level decrease pursuant to U.S.S.G. § 4C1.1 for Certain Zero Point Offenders does not apply.

A 2-level increase pursuant to U.S.S.G. § 3C1.1 for Obstruction of Justice does not apply.

A 2-level increase pursuant to U.S.S.G. § 3B1.3 for Abuse of Position of Trust does not apply.


Defendant's Sentencing Guideline calculations are, as follows:

Base Offense Level pursuant to Section 2B1.1 is          **7**

| | |
|---|---:|
| Specific Offense Characteristics pursuant to 2B.1.1(b)(1)(G) is | **+12** |
| Adjustment for Role in the Offense pursuant to 2B1.1(b)(16)(B) is | **+2** |
| Zero-Point Offender decrease is not applicable. | |
| **Total Offense Level:** | **21** |
| **Criminal History Category:** | **I** |
| **Guideline Provisions:** | **37-46 months** |

DATED: December 19, 2023, Honolulu, Hawaii.

IT IS SO ORDERED.

Helen Gillmor
United States District Judge